# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs August 5, 2014

## STATE OF TENNESSEE v. DARYL BOBO

**Appeal from the Criminal Court for Shelby County**
No. 11-03987      Chris Craft, Judge

No. W2013-02008-CCA-R3-CD  - Filed August 13, 2014

Appellant stands convicted of possession with intent to sell 0.5 grams or more of cocaine in a drug-free school zone, a Class A felony, and possession with intent to sell 0.5 ounce or more of marijuana in a drug-free school zone, a Class D felony. The trial court sentenced appellant as a Range III, persistent offender to sixty years for his cocaine conviction and twelve years for his marijuana conviction, to be served concurrently. On appeal, appellant argues that the evidence at trial was insufficient to support his convictions. Following our review of the briefs, the record, and the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

Claiborne Ferguson (on appeal); and Samuel Perkins (at trial), Memphis, Tennessee, for the appellant, Daryl Bobo.

Robert E. Cooper, Jr., Attorney General and Reporter; Tracy L. Alcock, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Rachel Russell, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case concerns the discovery of thirty-seven small bags of marijuana and six rocks of crack cocaine in appellant's possession while appellant was within 1000 feet of a school. Appellant was indicted for possession with intent to sell 0.5 grams or more of cocaine in a drug-free school zone (count 1), possession with intent to deliver 0.5 grams or more of cocaine in a drug-free school zone (count 2), possession with intent to sell 0.5 ounce or more

of marijuana in a drug-free school zone (count 3), and possession with intent to deliver 0.5 ounce or more of marijuana in a drug-free school zone (count 4). Appellant's trial began on April 1, 2013.

I. Facts

Richard Phillips, a detective with the Memphis Police Department Organized Crime Unit, testified that on March 4, 2010, he was patrolling a "hotspot" for crime and drug transactions located between a BP station and a Burger King when he saw appellant talking to two other males. Detective Phillips knew one of the other males due to prior interactions. He observed appellant and one of the other individuals conduct a "hand-to-hand transaction," referring to a drug transaction. Detective Phillips explained that he pulled into the parking lot of the BP station and approached the three men; however, appellant began walking away from the other two men toward a nearby Kroger. While Detective Phillips spoke with the two remaining men, he radioed other officers to inform them of the situation and described appellant's appearance. While Detective Phillips checked for arrest warrants and patted-down the two men in his presence, appellant "circled wide around [Detective Phillips] and went all the way behind [him], and then came back up over on the Burger King lot." Detective Phillips testified that he updated his partners regarding appellant's location and that the other officers arrived as appellant entered the Burger King. The other officers followed appellant inside.

Detective Phillips explained that he did not initially pursue appellant and instead remained with the two other suspects because he wanted to wait for the other officers to arrive in case appellant had a weapon or attempted to flee. Regarding his observation of the hand-to-hand transaction, Detective Phillips stated that the key indicators that a drug transaction was occurring were that appellant looked over his shoulder while he was talking to the other two men, the men stood close together, and the two men exchanged something in their hands. Detective Phillips testified that while he could not see exactly what was exchanged, based on his fourteen years of experience, those actions were indicative of a drug transaction. Detective Phillips explained that it was uncommon for officers to see the drugs themselves during a transaction "on the street level," meaning that the narcotics are being sold to the final consumer or user.

Detective Phillips testified that he saw the other officers bring appellant out of the Burger King and that he saw the six rocks of crack cocaine and thirty-seven baggies of marijuana confiscated from appellant. He stated that the items were inside a black bag. Detective Phillips stated that based on his experience, drugs that are packaged for resale are normally broken down into small amounts, like small rocks of crack cocaine or small baggies of marijuana. Detective Phillips also explained that there was a pawn shop between the

Burger King where appellant was apprehended and Northwest Prep Academy, a Memphis city school.[1]

During cross-examination, Detective Phillips agreed that when he first saw appellant, appellant had his back to Detective Phillips. Detective Phillips conceded that he did not arrest the other two individuals involved and that he did not know if they possessed any drugs. Detective Phillips also conceded that he did not know if they bought drugs from or sold drugs to appellant and that he had observed a transaction that he only suspected was a narcotics transaction. Detective Phillips agreed that he did not know when appellant bought the drugs in question.

Gilbert Goodwin, a detective with Memphis Police Department Organized Crime Team, stated that on March 4, 2010, he responded to Detective Phillips' call regarding appellant. Detective Goodwin explained that he and two other detectives arrived at the Burger King and saw appellant enter the restaurant. They followed appellant inside. Appellant immediately entered the restroom, and the detectives followed appellant into the facility. Detective Goodwin explained that after entering the restroom, he observed appellant pull a black plastic bag out of his right front pocket while standing at a urinal. One of the other detectives confiscated the bag and handed it to Detective Goodwin. Detective Goodwin stated that the odor of marijuana emanated from the bag, so he opened the bag and saw marijuana inside. Detective Goodwin explained that he gave the bag to the other detectives and handcuffed appellant before removing him from the restroom. The detectives then radioed Detective Phillips to join them in the Burger King parking lot. After Detective Phillips arrived, the detectives searched appellant, finding $376; placed the confiscated narcotics on the hood of Detective Phillips' car; and put appellant in the back seat of Detective Phillips' car. Detective Goodwin explained that the black bag taken from appellant contained thirty-seven bags of marijuana and six rocks of crack cocaine.

During cross-examination, Detective Goodwin conceded that he did not know appellant personally and that he did not know from where the money in appellant's possession originated.

Michael Gibbs, Jr., a patrolman with the Memphis Police Department, testified that on March 4, 2010, he was working with the Organized Crime Unit and that he responded to Detective Phillips' broadcast regarding appellant. Officer Gibbs explained that he saw appellant enter the Burger King and that he and the other two officers followed appellant into the restaurant. They found appellant in the Burger King restroom standing next to a urinal.

---

[1] Because chain of custody is not an issue on appeal, we have omitted all testimony regarding that issue.

As they watched appellant, appellant removed a black bag from his left pocket.[2] Officer Gibbs stated that he then detained appellant to prevent appellant from disposing of any evidence in the urinal. Officer Gibbs recalled that he handed the black bag to Officer Goodwin and then placed appellant in handcuffs. Officer Gibbs testified that he and the other two officers then escorted appellant outside, patted appellant down, seized $376 in cash, and examined the contents of the black bag, finding thirty-seven bags of marijuana and six rocks of crack cocaine.

Officer Gibbs explained that there were often problems with drugs near Northwest Prep Academy because "dealers like to sit right there and sell the dope to the kids as they come out of school." He stated that the drugs were usually "packaged proportionally for the kids, small quantities, nothing large because the kids can't afford that." Officer Gibbs explained that when he was working undercover buying drugs, he normally bought small quantities during each transaction. He also stated that from his experience as an undercover officer, it was uncommon for crack cocaine users to use both crack cocaine and marijuana and that if crack cocaine users had marijuana, it was usually "seeds and residue, nothing." Officer Gibbs also asserted that it was uncommon for a crack cocaine user to possess both crack and large amounts of money at the same time and that it was uncommon for a crack user to possess multiple crack cocaine rocks at one time.

During cross-examination, Officer Gibbs conceded that he never saw appellant speak to anyone else prior to appellant's arrest or participate in a narcotics transaction.

John Scott, Jr., an agent with the Tennessee Bureau of Investigation Nashville Crime Laboratory, testified that he examined and tested the narcotics found on appellant and determined that the items were 1.2 grams of cocaine base, also referred to as crack cocaine, and 33.5 grams of marijuana.

Jeffrey Allen Garey, an officer with the Memphis Police Department Crime Scene Investigation Unit, testified that he measured the distances between Northwest Prep Academy and the relevant locations in this case. Officer Garey created a diagram of the numerous measurements that he took at the scene, which was entered as an exhibit. Of particular relevance to this case were the following measurements: (1) the distance from the corner of Cleveland Street and Poplar Avenue, where the BP was located, to the entrance of the school was approximately 700 feet and (2) the distance from the half-way point between Burger King and the BP station, where the transaction occurred, to the entrance of the school was approximately 680 feet.

---

[2] We recognize that there is an inconsistency in the officers' testimonies regarding the location from which appellant retrieved the black bag.

Appellant and the State stipulated that Northwest Prep Academy was a public secondary school pursuant to Tennessee Code Annotated section 39-17-432.

After hearing the foregoing evidence, the jury convicted appellant as charged. The trial court merged count one with count two and merged count three with count four; therefore, appellant stands convicted of one count of possession with intent to sell 0.5 grams or more of cocaine in a drug-free school zone, a Class A felony, and one count of possession with intent to sell 0.5 ounce or more of marijuana in a drug-free school zone, a Class D felony. The trial court sentenced appellant as a Range III, persistent offender to sixty years for his cocaine conviction and twelve years for his marijuana conviction, to be served concurrently.

## II. Analysis

On appeal, appellant argues that the evidence at trial was insufficient to support his convictions. Specifically, he argues that the officers' testimonies were either too generalized or were incorrect and that Detective Phillips' testimony was based on mere suspicion. The State responds that the evidence at trial was sufficient to sustain appellant's convictions. We agree with the State.

The standard for appellate review of a claim challenging the sufficiency of the State's evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011). To obtain relief on a claim of insufficient evidence, appellant must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

On appellate review, "'we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom.'" *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). This court presumes that the jury

has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835; *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Because a jury conviction removes the presumption of innocence that appellant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted appellant, who must demonstrate to this court that the evidence is insufficient to support the jury's findings. *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).

To sustain a conviction for possession with intent to sell 0.5 grams or more of cocaine in a drug-free school zone, the State must prove beyond a reasonable doubt that appellant knowingly "[p]ossess[ed] a controlled substance with intent to . . . sell the controlled substance." Tenn. Code Ann. § 39-17-417(a)(4). In that regard, possession of cocaine "is a Class B felony if the amount involved is point five (.5) grams or more." Tenn. Code Ann. § 39-17-417(b)(1). However, when a defendant possesses cocaine with intent to sell 0.5 grams or more "on the grounds or facilities of any school or within one thousand feet (1,000') of the real property that comprises a public or private . . . secondary school, . . . [the defendant] shall be punished one (1) classification higher than is provided in § 39-17-417(b)-(i) for such violation." Tenn. Code Ann. § 39-17-432(b)(1).

To sustain a conviction for possession with intent to sell 0.5 ounces or more of marijuana in a drug-free school zone, the State must prove beyond a reasonable doubt that appellant knowingly "[p]ossess[ed] a controlled substance with intent to . . . sell the controlled substance." Tenn. Code Ann. § 39-17-417(a)(4). In that regard, possession of marijuana "containing not less than one-half ( ½ ) ounce (14.175 grams) nor more than ten pounds (10 lbs.) (4535 grams) of marijuana . . . is a Class E felony." Tenn. Code Ann. § 39-17-417(g)(1). However, when a defendant possesses marijuana with intent to sell 0.5 grams or more "on the grounds or facilities of any school or within one thousand feet (1,000') of the real property that comprises a public or private . . . secondary school, . . . [the defendant] shall be punished one (1) classification higher than is provided in § 39-17-417(b)-(i) for such violation." Tenn. Code Ann. § 39-17-432(b)(1).

Viewing the evidence in the light most favorable to the State, the evidence establised that Detective Phillips observed appellant engage in a hand-to-hand transaction that was indicative of a narcotics sale. Officer Gibbs and Detective Goodwin both testified that they observed appellant enter the Burger King and observed appellant take a black bag from his pants pocket while standing at a urinal in the Burger King restroom. All three officers testified that the bag contained thirty-seven baggies of marijuana and six rocks of crack cocaine. Officer Gibbs also explained that based on his experience, crack cocaine users did

not usually possess multiple rocks of crack cocaine and did not normally possess large amounts of marijuana when the narcotics were for personal use only. In addition to the seized narcotics, appellant possessed $376 in cash. Finally, Officer Garey testified that the location in which Detective Phillips originally observed appellant was approximately 680 feet from Northwest Prep Academy. Officer Gibbs testified that there were often problems with drugs near Northwest Prep Academy because "dealers like to sit right there and sell the dope to the kids as they come out of school." Given this evidence, a rational jury could have found the essential elements of possession with intent to sell 0.5 grams or more of cocaine in a drug-free school zone and possession with intent to sell 0.5 ounce or more of marijuana in a drug-free school zone beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319 (citing *Johnson*, 406 U.S. at 362).

Appellant specifically argues that the officers' testimonies were either too generalized or were incorrect and that Detective Phillips' testimony was based on mere suspicion. In doing so, appellant essentially attacks the credibility and veracity of the officers. However, in a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). As such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835; *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Because there was sufficient evidence to support appellant's convictions, and he is without relief as to this issue.

## CONCLUSION

Based on the parties' briefs, the record, and the applicable law, we affirm the judgments of the trial court.

_____
ROGER A. PAGE, JUDGE